IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL JOSEPH B.,

                Plaintiff,

                                     Civil Action No.
                                     1:17-CV-1236 (DEP)

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF:

MICHAEL JOSEPH B., *Pro se*
789 Bull Hill Road
Gilboa, NY 12076

FOR DEFENDANT:

HON. GRANT C. JAQUITH         SIXTINA FERNANDEZ, ESQ.
United States Attorney for the    Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

DECISION AND ORDER

    Plaintiff Michael Joseph B., who is proceeding *pro se* and *informa*

*pauperis*, has commenced this action pursuant to 42 U.S.C. §§ 405(g), 1383(c), to challenge a determination by the Acting Commissioner of Social Security ("Commissioner"), finding that he was not disabled at the relevant times, and therefore ineligible to receive the Social Security benefits for which he applied. Plaintiff contends that the Commissioner's determination did not result from the application of proper principles, and was not supported by substantial evidence. Specifically, he argues that his medical impairments result in greater limitations to his ability to perform work-related functions than assigned by the administrative law judge ("ALJ") who heard and decided the matter, and that the ALJ improperly discounted a significantly restrictive medical assessment rendered by his treating physician. Based upon a careful review of the record, considered in the light of plaintiff's argument, I find that the ALJ failed to properly discuss the basis for rejecting portions of opinions from one of plaintiff's treating sources. Accordingly, the Commissioner's determination will be reversed, and the matter remanded to the agency for further consideration.

I.      BACKGROUND

Plaintiff was born in April of 1963, and is currently fifty-five years old.

Administrative Transcript at 40, 207, 214.[1]  Plaintiff lives together with his landlord in a trailer in Gilboa, New York, where he has resided since July 1, 2015. AT 41-42, 209, 215. Plaintiff stands six foot, three inches in height, and at the time of the hearing, weighed one hundred seventy-five pounds, down from two hundred ten pounds in April 2015. AT 42, 246. Plaintiff attended regular school classes through sometime around the tenth grade, and has since achieved a GED. AT 53. Plaintiff is divorced, and has one daughter and one stepdaughter, both of whom are adults, and neither of whom resides with him. AT 70. Plaintiff is right hand dominant.

Plaintiff was last employed in June 2012. AT 57, 71-72, 247, 256-58. He worked as a laboratory technician for a drug store chain from approximately 1999 until 2009, and from 2010 until June 2012 as an equipment technician for the owner of approximately fourteen wholesale stores. *Id.* Plaintiff left his last place of employment by mutual agreement, based upon his lack of a vehicle, which was needed to travel to the various stores owned by his employer. AT 61. After leaving that place of

---

[1]     The administrative transcript, which consists of a compilation of medical records and other evidence that was before the agency at the time of its determination in this matter, and was filed by the Commissioner on March 27, 2018, Dkt. No. 13, will be hereinafter cited as "AT ___."

employment, plaintiff looked for other work, and drew unemployment benefits for six months. AT 58, 62. He ultimately stopped looking for work, however, and claims that his medical impairments precluded him from submitting further employment applications. AT 62.

Plaintiff suffers from several physical and mental impairments, including tremors in his hands and feet, migraine headaches, sporadic double vision, and depression and anxiety. Plaintiff's tremors, which are described as "intentional tremors," nearly cease when his hands are at rest, but increase with pressure and use. AT 45, 63, 319-20. Plaintiff has received treatment for these tremors from several sources, including Dr. L. Garten, Dr. Syed Sher, Dr. John Novak, all of whom practice with the Bassett Healthcare Network, located in Cooperstown, New York, and Dr. Jennifer Durphy, who works out of the Albany Medical Center.[2] AT 310-12, 313-24, 362-65, 368-81, 382-91. Dr. Durphy has diagnosed plaintiff as suffering from an essential tremor, which is expected to worsen over time.

---

[2]     In his decision, ALJ Andrew J. Soltes, Jr. sets forth his belief that the use of the terms "intentional tremors" or "intention tremors" by plaintiff's treating sources was intended to indicate that plaintiff's tremors increase when the affected extremity is used, and to distinguish them from "postural" tremors which occur when the extremity is at rest. AT 21 n. 1. This is consistent with definitions of the terms "intention tremor" as defined by authoritative medical sources. *See, e.g.*, STEDMAN'S MEDICAL DICTIONARY 935260 (defining the term "intention tremor" to mean "a tremor that occurs during the performance of precise voluntary movements, caused by disorders of the cerebellum or its connections.")

AT 361. Examining physicians have observed tremors in the first and third digits of plaintiff's right hand and the fourth digit of his left hand. *See, e.g.*, AT 316. It has also been observed that the tremor significantly worsens when plaintiff attempts to write. AT 319; *see also* 62-63.

Plaintiff has been prescribed primidone and Topamax for his tremors, although Topamax was recently discontinued after a short time based upon concern for his liver and the fact that it did not appear to be helping. AT 86-88. He has also been prescribed naproxen to address the related swelling in his hands and feet. AT 92. According to Dr. Durphy, plaintiff's tremors are well-controlled on primidone. AT 353. Plaintiff experiences some side effects from the medication, however, including tiredness and low energy. AT 96. Plaintiff's health care providers have recommended physical therapy and occupational therapy, but plaintiff has not engaged in either of those therapies. AT 89, 93. An electromyogram nerve conduction study performed in November 2014 of plaintiff's upper and lower extremities yielded negative results. AT 340, 352.

Plaintiff also suffers from migraine headaches, which he described as serious and lasting between four and five hours if they are caught early, and as long as two to three days if they are not. AT 93. Plaintiff medicates with Motrin for his migraines. AT 86-87, 93, 347-48.

Plaintiff additionally claims to suffer from anxiety and depression. AT 86-87, 247-8. However, he does not appear to have received significant mental health treatment for those conditions, although he has been prescribed Zoloft.[3] AT 90-91. As a result of a consultative examination conducted by Dr. Marvella Bowman on June 26, 2015, plaintiff was diagnosed as suffering from unspecified depressive and anxiety disorders, as well as an adjustment disorder. AT 350. The examiner noted, however, that the conditions did not appear to be significant enough to interfere with plaintiff's ability to function on a daily basis. *Id.*

Plaintiff also suffers from double vision, described by him as sporadic, and for which he last examined an ophthalmologist several years ago. AT 50. In addition, plaintiff saw Dr. Paul Russo, an optometrist with Bassett Health Care Clinic, on September 4, 2014 for an eye exam. AT 309. Based upon that exam, he was diagnosed with alternating esotropia and transient diplopia.[4] *Id.* It was noted in the report of that exam that plaintiff had an upcoming appointment with a neurology specialist, and that

---

[3]     Plaintiff attributes his depression and anxiety to his feeling of the effects of the hand and foot tremors. AT 86-87.

[4]     According to authoritative medical sources, diplopia is described as double vision, or a "condition in which a single object is perceived as two objects." STEDMAN'S MEDICAL DICTIONARY 250980. Esotropia is the turning in of one or both eyes. *Esotropia*, AM. ASS'N FOR PEDATRIC OPTHOMOLOGY & STRABISNUS, https://aapos.org/terms/conditions/48 (last visited Dec. 4, 2018).

there would be a possible magnetic resonance imaging ("MRI") testing of plaintiff's head and thyroid function. *Id.* MRI testing of plaintiff's brain, performed on October 21, 2016, yielded results that were described as "unremarkable." AT 390-91.

According to plaintiff's medical records, he smokes and has been diagnosed as suffering from tobacco abuse. AT 315, 32-384. Although plaintiff has been advised to quit smoking, he refuses to do so. AT 321.

Plaintiff engages in a fairly wide range of daily activities. He is able to bathe and take care of his personal needs and grooming; has cats; makes simple meals, including sandwiches, cereal, and soup; can do laundry, vacuum, sweep, and mop; is able to dress, although fastening buttons is somewhat difficult for him; is able to tie his shoes; can take out the trash and mow the lawn using a push, self-propelled mower; can shovel snow from the driveway; is able to socialize with friends; can take public transportation; and was at one point, approximately four years ago, on a roof painting something for his sister. AT 45, 66, 78-84, 341, 349-50. He also watches television and listens to the radio and reads. *Id.*

II.  PROCEDURAL HISTORY

A.  Proceedings Before the Agency

Plaintiff applied for Title II disability insurance benefits and Title XVI

supplemental security income ("SSI") benefits on March 3, 2015, alleging a disability onset date of June 1, 2012. AT 207-22. In a disability function report, plaintiff attributed his alleged inability to work to hand and foot tremors, double vision (both eyes), and severe migraines.[5] AT 46. Following an initial denial of those applications, AT 145-46, a hearing was conducted by ALJ Andrew J. Soltes on December 20, 2016. AT 31-117. On March 2, 2017, ALJ Soltes issued a decision in which he found plaintiff was not disabled at the relevant times and therefore ineligible for the disability insurance and SSI benefits sought. AT 15-26.

In his decision, ALJ Soltes applied the familiar, five-step sequential test for determining disability.[6] After finding that plaintiff was insured through December 31, 2017, at step one, ALJ Soltes concluded that plaintiff had not engaged in substantial gainful activity since June 1, 2012. Proceeding to step two, ALJ Soltes determined that plaintiff suffers from several severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including an "essential tremor", migraine headaches, alternating esotropia, and diplopia, but concluded at

---

[5]     At the hearing in this matter, plaintiff modified his position, testifying that it was his tremors alone that preclude him from working. AT 86.

[6]     That test will be more fully described further on in this decision. *See* pp. 13-15, *post*.

step three that those impairments do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations. AT 17-20.

The ALJ next surveyed the record and concluded that plaintiff retains residual functional capacity ("RFC") to perform light work, subject to exceptions, including as follows:

> [H]e can occasionally operate hand or foot controls, or balance; he is precluded from climbing ladders, ropes, or scaffolds, working from unprotected heights, or using motor vehicles for work purposes; he should avoid hazardous machinery; he can tolerate occasional changes in the work setting and can perform occasional fingering with his hands bilaterally.

AT 20.

ALJ Soltes then proceeded at step four to apply that RFC finding, concluding that plaintiff is not capable of performing his past relevant work as an electronic technician, based principally upon the exertional requirements associated with that position. AT 25. At step five, relying upon the testimony of a vocational expert, ALJ Soltes concluded that given his RFC, plaintiff is able to perform the functions of an electronic component processor and an assembler, and that both positions are available in sufficient numbers in the national economy to support a finding

of no disability.[7] AT 25-26. ALJ Soltes therefore concluded that plaintiff was not disabled at the relevant times, and thus ineligible for the benefits sought. AT 26. The ALJ's decision became a final determination of the agency on September 7, 2017, based upon the Social Security Administration Appeals Council's denial of plaintiff's request for review of that determination. AT 1-6.

B.    Proceedings in this Court

Plaintiff commenced this action on November 10, 2017, and requested leave to proceed in the action *in forma pauperis*. Dkt. Nos. 1, 3. Plaintiff's motion for permission to proceed without prepayment of fees and costs was granted on November 14, 2017. Dkt. No. 7. With the filing of the administrative transcript of proceedings before the agency on March 27, 2018, Dkt. No. 13, and briefs on behalf of plaintiff and the Commissioner on May 8, 2018 and June 15, 2018, respectively, Dkt. Nos. 15, 16, the matter is now considered as having been submitted on cross-motions by the parties for judgment on the pleadings, pursuant to Rule 12(c) of the

---

[7]    In her brief, the Commissioner argues that ALJ Soltes properly relied upon the medical vocational guidelines set forth in the regulations ("grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, at step five to find that plaintiff was not disabled. *See* Dkt. No. 16 at 13-14. It is clear from his decision, however, that ALJ Soltes found that the grids should not apply given the additional limitations found in the RFC, and instead relied upon the testimony of the vocational expert who testified at the hearing in order to find no disability. *See* AT 25-26.

Federal Rules of Civil Procedure and is ripe for determination.[8]

III.    DISCUSSION

    A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have

---

[8]    This case is before on consent of the parties, pursuant 28 U.S.C. § 636(c) and General Order No. 18 of this court. *See* Dkt. No. 4.

reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be " 'more than a mere scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 308 U.S. at 229); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*, 402 U.S. at 401). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951; *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

    The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]" 42 U.S.C. §

423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled. *See* 20 C.F.R.

§§ 404.1520, 416.920. The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further. *Id.* §§

404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments which significantly restricts his

or his physical or mental ability to perform basic work activities. *Id.* §§

404.1520(c), 416.920(c). If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    Treating Source Statement

On June 16, 2016, one of plaintiff's treating sources, Dr. Jennifer Durphy, completed a medical source statement. AT 356-361. While a majority of that statement coincides with the RFC finding, he did not incorporate the doctor's finding of occasional limitations to feeling, pushing and pulling, and difficulty in performing tasks requiring good fine motor control. This, plaintiff contends, was error and should result in a reversal with the matter being remanded to the agency. Dkt. No. 15 at 6.

It is the duty of an ALJ to determine a claimant's RFC based upon all of the evidence in the record. 20 C.F.R. §§ 404.1527(e)(2), 404.155(a), 404.1546(c), 416.927(e)(2), 416.945(a), 416.946(c). A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013). An RFC determination is informed by consideration of "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Tankisi*, 521 F. App'x at 33.

To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capabilities, such as her ability to sit, stand, walk, lift,

carry, push, and pull. 20 C.F.R. §§ 404.1545(b), 416.945(b). Nonexertional

limitations or impairments, including impairments that result in postural

and manipulative limitations, must also be considered. *Id.* When rendering

an RFC determination, the ALJ must specify those functions that the

claimant is capable of performing; conclusory statements concerning her

capabilities will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*

*v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *accord, e.g., Bump v.*

*Comm'r of Soc. Sec.*, No. 15-CV-1077, 2016 WL 6311872, at *3 (N.D.N.Y.

Oct. 28, 2016) (Suddaby, C.J.). In addition, the ALJ's RFC determination

must be supported by substantial evidence. *Ferraris*, 728 F.2d at 587;

*accord, Bump*, 2016 WL 6311872, at *3.

As one of plaintiff's treating sources, the opinions of Dr. Durphy were

entitled to special consideration. Ordinarily, the opinion of a treating

physician regarding the nature and severity of an impairment is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence. *Burgess v. Astrue*, 537 F.3d

117, 128 (2d Cir. 2008).[9] Such opinions are not controlling, however, if

---

[9] The regulation governing treating physicians provides as follows:

Generally, we give more weight to medical opinions from

they are contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Where the record includes contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Burgess*, 537 F.3d at 128.

In his RFC finding, the ALJ limited plaintiff to occasional operation of hand and foot controls, and occasional fingering with hands bilaterally. He thus gave controlling weight to the portion of Dr. Durphy's opinion finding that plaintiff is limited to occasional fingering bilaterally. AT 358. Plaintiff argues, however, that his RFC did not address the other limitations, including only occasionally reaching overhead and in other directions, occasionally handling, occasionally feeling, and occasionally pushing and pulling, as well as the additional observation that plaintiff could be expected to have difficulty performing tasks requiring good fine motor

---

your treating sources . . . . If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply [various factors] in determining the weight to give the medical opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

control, such as writing, typing, and using tools.[10] AT 358.

If the ALJ does not give controlling weight to a treating source's opinion, he must apply several specific factors to determine what degree of weight should be assigned to the opinion, including (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence supporting the treating provider's opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence that has been brought to the attention of the ALJ. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 404.1527(c)(3)-(6); 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), 416.927(c)(3)-(6); *Halloran*, 362 F.3d at 32. When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran*, 362 F.3d at 32. The failure to apply the appropriate legal standards for considering a treating physician's opinions constitutes a proper basis for reversal of an ALJ's determination, as is the ALJ's failure to provide reasons for rejection of his opinions. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *accord, Zabala v. Astrue*, 595 F.3d 402, 409

---

[10]     It should be noted that the consultative examiner, Dr. Kavtilya Puri, found at least "mild limitations" to plaintiff's fine motor movements. AT 342.

(2d Cir. 2010).

Conspicuously lacking from ALJ's decision is an explanation as to why he rejected the additional restrictions of Dr. Durphy's medical source statement, which are inconsistent with the ALJ's RFC findings. While it is true, as the Commissioner argues, that Dr. Durphy noted "incongruities" in plaintiff's reports of tremors, and the precise etiology for his tremors is unknown, her treatment notes do not question plaintiff's veracity, instead noting that the tremors have been lifelong and increasing in severity and frequency. *See, e.g.*, AT 366-67. The Commissioner's arguments in support of the RFC finding represent *post-hoc* rationalization and fail to provide a basis for a meaningful judicial review of rejection of portions of Dr. Durphy's medical source statement.

The Commissioner argues that any failure to include these additional limitations in the ALJ's RFC finding is harmless, focusing on the "feeling" limitation and overlooking limitations concerning reaching, pushing and pulling. A review of the Dictionary of Occupational Titles ("DOT") entries for the positions of electronic/component processor and assembler do not necessarily make it clear that a person limited to only occasional reaching in all directions, handling, feeling and pushing/pulling could perform in

those positions.[11]  *See* DOT Nos. 590.684-014 (electronic-component

processor), 732.684-014 (assembler) (4th Ed. Rev. 1991 WL 67983).

In sum, because I find that the ALJ in this matter failed to comply

with his obligation under the regulations to properly explain his rejection of

these important aspects of the medical source statement of Dr. Durphy, a

treating source, the resulting determination must be reversed and the

matter responded to the agency for further consideration, without a

directed finding of disability.[12]

IV.    SUMMARY AND ORDER

Plaintiff's treating physician, Dr. Jennifer Durphy, issued a medical

source statement which contains limitations on plaintiff's ability to reach,

handle, feel, push, and pull, and additionally observes that he will have

---

[11]    Despite the Commissioner's arguments, the disputed limitations, particularly in reaching and handling, are limiting and would eliminate the two jobs testified to by the vocational expert. *See* AT 112-113.

[12]    Reversal and remand for the calculation of benefits is only warranted "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)). Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision. *See Rosa,* 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek,* 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)). In this instance, remand is required for the purpose of making further findings and offering additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

difficulty in performing tasks requiring good fine motor control. These limitations are not included within the ALJ's RFC determination, nor does his opinion contain the discussion contemplated under the regulations and case law when treating source opinions are rejected. Accordingly, I find that the determination from which plaintiff now appeals is not supported by substantial evidence. It is therefore hereby

ORDERED, that plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is GRANTED, the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 16) is DENIED, the Commissioner's determination in this matter is VACATED, and the matter is REMANDED without a directed finding of disability, for further proceedings consistent with this decision and order; and it is further

ORDERED the clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge


Dated:      December 6, 2018
            Syracuse, New York